STATE, Respondent, v. WHITE, Appellant.

(147 N. W. 264.)

1.  **Gaming—Keeping Implements for Such Use—Criminal Responsibility—Intention—Sufficiency of Evidence.**

    Evidence, in a prosecution for maintaining and keeping articles useful, or intended to be used, in playing poker, in violation of Pen. Code, Sec. 395, held, sufficient to sustain verdict of conviction.

2.  **Gaming—Criminal Responsibility—Members of Club—Keeping Articles Used for Gambling—Instructions.**

    Under Pen. Code, Sec. 395, prohibiting keeping of articles used for or useful in playing cards or games of chance "upon which money is usually wagered," held, a club could keep tables, chips, and cards for playing for amusement only, and members knowingly permitting, assisting, or advising others in playing for money with the club's paraphernalia are guilty of violating the statute, since individual members might keep such articles in the club's rooms without a majority of the members having anything to do with such unlawful purposes; and instructions to that effect were not erroneous.

(Opinion filed May 18, 1914.)

Appeal from Circuit Court, Butte County. Hon. WILLIAM G. RICE, Judge.

John T. White, the defendant, was convicted of keeping articles used for gambling, and he appeals. Affirmed.

*Benedict & Wall,* for Appellant.  :

The fact that a poker game was in progress and that Mr. White was playing in this game, or that he was acting as cashier for those who were playing a part of the time, did not establish the fact that Mr. White was keeping and maintaining the table, cards, or the chips used in violation of sec. 395 of the Penal Code, until it was first established that Mr. White was the owner, possessor, or in control of the articles, and kept them for gambling uses.

The evidence discloses that the chips had been loaned by one Roberts to the Owls Club and were not under the control of White, and were not kept for gambling purposes. That gambling was strictly prohibited by the rules of the Owls Lodge.

There is manifest error and the defendant was prejudiced and prevented from having a fair trial by the instructions given by the court.

All the testimony goes to show that the defendant at the time of the offense charged in this information did not have control of the tables, cards, etc., that were used at the time for gambling purposes, but on the contrary that the Owls Club had charge. State v. Ackerman, 41 Atl. 697; 62 N. J. Law, 456; Ribbs v. State, 4 South. 275-6; 84 Ala. 13.

The undisputed testimony shows that they did not keep them for gambling purposes, but on the contrary, gambling was prohibited in the club rooms. McCoy v. Zane, 65 Mo. 11 and 15.

*Royal C. Johnson, Attorney General, M. Harry O' Brien, Asst. Attorney General, J. W. Mavlin, State's Attorney,* for Respondent.

"Criminal intent will be presumed from the commission of an act in its nature unlawful." Am. & Eng. Enc. of Law, Vol. 8, 286; United States v. Adams, 2 Dakota, 329.

The evidence of the defendant himself on direct examination, which was accepted by the court, is sufficient to sustain the verdict in this case. 20 Cyc. 896.

McCOY, J. [1] Appellant was convicted of violating section 395 of the Penal Code, which provides as follows:

"It is unlawful to maintain or keep any table, cards, dice or any other article or apparatus whatever, useful or intended to be used in playing any game of cards or faro, or other game of chance, upon which money is usually wagered."

From the judgment of conviction, and order overruling a motion for a new trial, defendant has appealed.

It is contended that the evidence is insufficient to sustain the verdict. There was testimony introduced tending to show that on the 22nd day of November, 1911, a poker game for money was started in a certain room in a certain building owned by appellant in the City of Belle Fourche; that such game was, without cessation, continued throughout the night of the 22nd and until late in the night of the 23rd when the same was stopped by the sheriff arresting appellant and others engaged in said game. This game was played upon a table with cards, and poker chips. At the time the arrests were made appellant was acting as cashier, or stake holder of the game and settled in cash with those having poker chips; this room was commonly reported to be the quarters of appellant. One witness testified that he had been in that room at different times before and had played poker for money,—that there was a davenport or bed in the room,—that he had seen appellant lie down and go to sleep there at different times,—had seen him run the game and bought chips from him,—that, when the game was through, he would cash chips for money whether he played or not,— that during the night in question they changed decks of cards,— that appellant on some occasions produced new decks and that when a new deck was wanted some one produced it from his pocket. The officers who made the arrest testified that they knocked on the door and that appellant opened the door and told them to come in. The testimony also showed that about the first of October, 1911, the room in which said game was being played had been rented to the Owls Club, and that the Owls Club kept cards, tables and poker chips for the amusement of its members, but that gambling for money was prohibited, by the rules of said club, and that at the time this game in question was being played the appellant was not in control of said room, but that appellant was a member of the Owls Club. Appellant testified that he placed the poker chips in the club room, that they were loaned to

the club by Dan Roberts, a member. It is the contention of appellant that the tables, cards and poker chips were the property of the Owls Club, which they found in the room and casually used while playing this game, and that appellant was not then and there maintaining and keeping tables, cards and poker chips with the intent of gambling. While we are of the view that the Owls Club had the legal right to keep and maintain tables, cards and poker chips purely for the purpose of the amusement of its members, and with no intent of gambling, still, we are of the view that the members of such club might be guilty of violating the law by themselves maintaining and keeping, in the rooms of the club, such articles or any of them, for the purpose of gambling. It is conclusive that gambling was done at the time in question, and the *intentions* of parties may be proven by their acts, as well as by words, and it often times occurs that one's acts speak louder than his words. This was a matter the jury had a right to take into consideration in this case in determining whether or not appellant was a party to the intentional maintaining and keeping of tables, cards or poker chips, or any or either of such articles, in said room for use in gambling. It will be observed that the offense charged consists in the maintaining and keeping of tables, cards, or any other article intended to be used for the purpose of gambling. The offense here charged is not for maintaining or keeping a *room* or *place* where gambling is permitted. The character of the place or who owns or controls it does not enter into the definition of the offense, but is only incidental in connection with the maintaining and keeping of tables, cards and other articles. Now, it appears from the evidence in this case, that while this game of poker was in progress it became necessary to have new decks of cards, or at least the players in the game desired new decks, and that on some of such occasions appellant went down into his own pockets and produced new decks, clearly indicating that he himself was keeping and maintaining in his own possession new decks of cards for the needs and necessities of the poker game. There is no evidence that these new cards were any part of the property or paraphernalia of the Owls Club, or that it was customary or according to the rules of such club that the individual members thereof should at all times have their pockets loaded with new decks of cards for the amusement of the members or

visitors of the club. We are of the view that there was sufficient evidence to sustain a conviction.

[2] The court among other things, instructed the jury that "The Owls Club had the right to have tables, chips and cards in their rooms for the purpose of playing games for amusement, but had no right to keep or maintain their tables, chips, and cards for the purpose of being used for playing any games of chance on which money was wagered. And, as a matter of law, that any member of the Owls Club who knowingly permitted, assisted or advised others to play games of chance with the paraphernalia, tables, chips and cards of the club, violated the statutes of this state under which this defendant is charged. And if you believe from the evidence beyond doubt, that at or about the time charged in the information this defendant aided, abetted, advised or assisted either members of the club or outsiders to play games of chance with the tables, chips and cards of the club he violated the statutes of this state, and is guilty as charged." This instruction was excepted to and is now urged as error. We are of the view that the individual persons who constitute the membership of a club, composed of a collection of individuals, may be guilty of keeping and maintaining tables, cards or other articles for the purpose of gambling, although the same articles may be part of the paraphernalia of the club. A majority of the members of the club might not assist or contribute in the least in the keeping and maintaining of such articles for such purposes, while other members of the same club might assist and contribute in their keeping for the unlawful purpose of gambling. The purpose for which a thing is kept is often determinable from the use to which it is put. Hence, if the defendant, as an individual member of such club, kept tables, cards or chips in the rooms of said club for the purposes of gambling, then defendant would be guilty of the offense charged. This was the purport of the instruction given. All assignments of error have been carefully considered..

Finding no error in the record the judgment and order appealed from are affirmed.